AO 91 (Rev. 11/11) Criminal Complaint                AUSA Erik A. Hogstrom (312) 353-8709

**FILED**
**JUL 2 7 2017**
**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ALBERT ROSSINI

CASE NUMBER:
**UNDER SEAL**

**17CR 522**
**MAGISTRATE JUDGE MASON**

CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

In or about no later than February 2017 and continuing until at least June 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, , the defendant(s) violated:

*Code Section*

Title 18, United States Code, Section 1344

*Offense Description*

bank fraud

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
JODY BLAU
Special Agent, Federal Bureau of Investigation (FBI)

Sworn to before me and signed in my presence.

Date: July 27, 2017

_____
*Judge's signature*

City and state: Chicago, Illinois

MICHAEL T. MASON, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

ss

## AFFIDAVIT

I, JODY BLAU, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed for approximately 9 years. My current responsibilities include the investigation of white collar crime, including mail, wire, and bank fraud.

2. This affidavit is submitted in support of a criminal complaint alleging that ALBERT ROSSINI has violated Title 18, United States Code, Section 1344. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ROSSINI with bank fraud, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, witness interviews, and records obtained during the investigation.

### Background

4. On August 20, 2015, in the Northern District of Illinois, case number 15 CR 515, a federal grand jury indicted ROSSINI on 14 counts of mail and wire fraud based on allegations that ROSSINI and three co-schemers carried out a Ponzi scheme that defrauded investors of at least three million dollars beginning no later than September 2011 and continuing up until the date of the indictment. These charges against ROSSINI are currently pending before the United States District Judge John Z. Lee.

5. ROSSINI has been released on bond under conditions of court supervision that strictly limit his freedom of movement, as well as his ability to participate certain types of financial transactions. More specifically, ROSSINI has been placed on home detention with permission to leave home only to meet with his lawyers or to attend medical appointments, religious services, or court hearings. (15 CR 515, Dkt. No. 89 [November 13, 2015].) ROSSINI is also prohibited from acting as a fiduciary in financial transactions, engaging in the sale of mortgage notes or other mortgage related interests, engaging in the sale or resale of real estate, and brokering loans. (15 CR 515, Dkt. Nos. 79 [September 29, 2015], 89 [November 13, 2015], 111 [December 21, 2015], and 119 [January 27, 2016].)

6. Since these orders were entered, the FBI has discovered that ROSSINI, while under Court supervision, has engaged in an ongoing check fraud scheme through which he has fraudulently obtained thousands of dollars from banks or bank depositors. The investigation has revealed that over the past several months, ROSSINI has engaged in a pattern of issuing checks drawn on nonexistent, closed, or unauthorized accounts. In addition to presenting these fraudulent checks for payment, in several instances, ROSSINI has caused these fraudulent checks to be deposited into others' bank accounts and shortly thereafter caused cash to be withdrawn from said bank accounts, thereby causing the accounts to be overdrawn while retaining the fraudulently obtained cash for himself.

**In Early 2017, ROSSINI Defrauded and Obtained Blank Checks from Witness JP**

7. The FBI has interview Witness JP, who is approximately 80 years old and owns two small businesses based in Itasca, Illinois. Witness JP advised investigators that he uses the same Chase bank account for both businesses. Witness JP has dealt with ROSSINI in the past while Witness JP was attempting to obtain business loans.

8. According to Witness JP, sometime in early 2017, ROSSINI asked Witness JP for financial help because ROSSINI had to pay what ROSSINI described as "minor" expenses. According to Witness JP, he felt bad for ROSSINI so Witness JP gave ROSSINI a small number of blank checks signed by Witness JP from Witness JP's Chase business bank account. According to Witness JP, ROSSINI represented to Witness JP that ROSSINI would use the checks to pay unspecified taxes or fees.

9. According to Witness JP, in approximately February or March 2017, ROSSINI also asked Witness JP if Witness JP could help ROSSINI by allowing ROSSINI to deposit a check into Witness JP's bank account and then withdraw the funds. According to Witness JP, ROSSINI then provided him with a check (Check 1) in the amount of approximately $3,900.[1] ROSSINI then signed Check 1 over to Witness JP, and Witness JP then deposited the check into his Chase bank account and withdrew $2,000, which he then gave to ROSSINI.[2] According to Witness JP, Chase bank later advised him that Check 1 was a bad check. When Witness JP informed ROSSINI that the check bounced, ROSSINI promised to pay the $2,000 back to Witness JP. According to Witness JP, ROSSINI has not kept his promise and has not paid the money back.

10. Around the same time that Witness JP provided ROSSINI with blank checks, Witness JP was contacted by a Chase Bank representative about a check written on Witness JP's account for approximately $8,000 that Chase Bank had identified as a forged check[3] (Check 2).

---

[1] Witness JP did not have a copy of this check, and as today's date, the FBI has not yet received a response to a subpoena for records. As such, many of the details of the check (such the payee, accountholder, and signor) are unknown.

[2] According to Witness JP, due to a bank error, Check 1 was actually deposited into Witness JP's wife's bank account, but the money was withdrawn from Witness JP's account.

[3] As with Check 1, Witness JP did not have a copy of this check, and as of today's date, the FBI has not yet received a response to a subpoena for records. As such, many of the details of the check (such the payee, accountholder, and signor) are unknown.

Witness JP had not written or authorized such a check, and so the Chase representative recommended that Witness JP close to bank account, which Witness JP then did.

### Between March and May 2017, ROSSINI Used or Attempted to Use Several Fraudulent Checks, Including Checks Drawn on Witness JP's Account, to Pay Debts or Obtain Cash

11. The FBI has interviewed Witness MA, who has long been ROSSINI's landlord at ROSSINI's office space, located at 3924 West Devon Street in Lincolnwood, Illinois ("the Devon Address"). Witness MA advised that in March 2017, in order to pay rent ROSSINI owed Witness MA, ROSSINI signed over to Witness MA a check in the amount of $2,100 payable to ROSSINI and drawn on Witness JP's Chase bank account (Check 3). According to Witness MA, and as reflected in bank records provided by Witness MA, Check 3 was returned by Witness MA's bank because the account it was written on had been closed.

12. According to Witness GS[4], in approximately March 2017, ROSSINI approached Witness GS and informed him that he was going to take out a $50,000 "hard money loan" to repay $22,500 that ROSSINI owed Witness GS.[5] According to Witness GS, ROSSINI advised that ROSSINI needed approximately $4,000 to cover closing costs for the loan. ROSSINI asked Witness GS to provide this money up front and promised to repay Witness GS once the loan was completed, along with the money ROSSINI owed Witness GS. According to Witness GS, he gave ROSSINI the $4,000 to cover the supposed closing costs, but ROSSINI never obtain the loan or repaid Witness GS. When Witness GS confronted ROSSINI, ROSSINI told Witness GS that the

---

[4] In 2013, Witness GS was convicted of bank fraud in the Northern District of Illinois in a check kiting scheme and was sentenced to 21 months in prison. Witness GS is currently on supervised release.

[5] According to Witness GS, in 2012, he gave ROSSINI approximately $22,500 to invest in a mortgage note for a distressed property in Skokie, Illinois. According to Witness GS, ROSSINI advised him that his money would be used to purchase a mortgage note on the Skokie property and ROSSINI would eventually foreclose on the property, resell it, and split the profits with Witness GS. According to Witness GS, ROSSINI never delivered on his promises and never returned Witness GS's funds to him.

lender took the money provided by Individual GS but did not, in fact, disburse the "loan" proceeds. ROSSINI then promised to pay back Witness GS.

13. According to Witness GS, in late May 2017, ROSSINI contacted Witness GS and informed him that ROSSINI had a cashier's check for $10,500 that he would sign over to Witness GS and deposit into Witness GS's bank account if Witness GS would then withdraw all but $4,000 that ROSSINI owed Witness GS. According to Witness GS, Witness GS agreed and provided ROSSINI his bank account information at Wintrust Bank, and ROSSINI then deposited into Witness GS's account what ROSSINI had represented to be a cashier's check. The following day, believing his account to contain an additional $10,500, Witness GS went to Wintrust Bank with ROSSINI and withdrew $6,500 in cash, which he turned over to ROSSINI, believing that $4,000 now remained in the account as repayment for Witness GS's provision of $4,000 for supposed loan closing costs.

14. According to Witness GS, shortly after this deposit and withdrawal, Wintrust informed Witness GS that his account was overdrawn because, instead of depositing a single cashier's check for $10,500, ROSSINI had actually deposited into Witness GS's bank account three personal checks payable to Witness GS totaling approximately $18,364 (Check 4, Check 5, and Check 6). All three of those personal checks were bad checks.

15. Witness GS has allowed the FBI to review his text messages, which confirm that on or about May 24, 2017, Witness GS sent a text message to ROSSINI containing his bank account information at Wintrust Bank.

16. I have reviewed Wintrust Bank records from Witness GS's account. I have also reviewed Wintrust surveillance footage. These records and video confirm that on May 25, 2017, ROSSINI entered a Witntrust Bank branch in Chicago, Illinois, and deposited three personal

checks into Witness GS's bank account. One of these checks (Check 4) was in the amount of $6,664 and drawn on Witness JP's bank account (described above); another check (Check 5) was in the amount of $3,900 and drawn on an attorney trust account belonging to Attorney RK; and one check (Check 6) was in the amount of $7,800 and drawn on a Go Bank account and listed ROSSINI as the accountholder.

17. The Wintrust Bank records and surveillance footage further show that on May 26, 2017, the day after ROSSINI deposited Checks 4, 5, and 6 into Witness GS's account, ROSSINI and Witness GS entered the same Wintrust Bank branch together, at which time Witness GS withdrew $6,500 in cash. Surveillance video shows that as Witness GS and ROSSINI were passing through the bank branch lobby, Witness GS gave the cash he had just withdrawn to ROSSINI.

18. The FBI's investigation has revealed that all three checks deposited into Witness GS's account were fraudulent. Regarding Check 4, during the FBI's June 2017 interview of Witness JP, investigators showed Check 4 to Witness JP. According to Witness JP, he does not know Witness GS, and did not authorize the check or the amount of the check. In fact, as described above, Witness JP had closed the bank account on which Check 4 was drawn in March 2017 because ROSSINI had attempted to write an unauthorized check on the account.

19. Regarding Check 5, Witness MA and Witness GS both advised that they know the purported payor on the check, Attorney RK, because he also has office space at the Devon Street Address and often works with ROSSINI. After Check 5 bounced, Witness GS and Witness MA met with Attorney RK and showed Attorney RK a copy of Check 5. Attorney RK advised Witness GS and Witness MA that Check 5 was drawn on a closed client trust (IOLTA) account of his. Attorney RK then examined a check ledger for this closed IOLTA account and determined that Check 5 came from the back of this ledger. Attorney RK noted that Attorney RK allows ROSSINI

6

to use Attorney RK's fax and copy machines and surmised that ROSSINI must have taken Check 5 from Attorney RK's office. The FBI subsequently attempted to interview Attorney RK, but Attorney RK refused to discuss the matter with agents, citing his attorney-client relationship with ROSSINI.

20. Regarding Check 6, the FBI interviewed Witness MA, as well as Witness CC who is a longtime associate of ROSSINI who works in the same office space with ROSSINI at the Devon Street Address. Witness CC advised agents that on several occasions over the past few months, ROSSINI has asked Witness CC, who runs a small business and has access to check-writing software, to help ROSSINI by using Witness CC's computer to create and print checks for Rossini. ROSSINI provided Witness CC with bank account and routing numbers for what ROSSINI claimed were bank accounts he was authorized to write checks on. Witness CC agreed to help ROSSINI, believing he had permission to write the checks. Additionally, ROSSINI also provided bank account information for an account purportedly held in ROSSINI's own name at Go Bank. According to Witness CC, when Witness GS later showed Witness CC Checks 4, 5, and 6, he recognized Check 6 as a check he created for ROSSINI due to its formatting. According to Witness CC, he also recognized the Business name and address on Check 4 belonged to Witness JP, a former client of Witness CC. Witness CC further provided the FBI with copies of four additional blank checks he created for ROSSINI.

21. During this investigation, the FBI has interviewed Witness SB, who works at Wintrust Bank. According to Witness SB, and as also reported by Witness GS, when Wintrust determined that Check 4, Check 5, and Check 6 were all bad checks, Witness SB had a conference call with Witness GS and an individual who identified himself as ROSSINI. Witness GS confirmed that this conference call involved ROSSINI, Witness SB, and himself. During the call,

ROSSINI stated words to the effect that he "took responsibility" for the amount Witness GS's account is overdrawn, provided excuses for why the checks had bounced, and promised to make payments to cover the deficit. Specifically with respect to Check 6, Witness SB recalls that ROSSINI claimed that Check 6 had bounced because ROSSINI had deposited another check into his Go Bank account prior to writing Check 5 and that check had not cleared as ROSSINI had expected.

22. The FBI has spoken to and received records from Go Bank. According to GoBank's website, GoBank is a brand of Green Dot Bank, Member FDIC, which also operates under the brands Green Dot Bank and Bonneville Bank. Deposits under any of these trade names are deposits with a single FDIC-insured bank, Green Dot Bank. According to Go Bank, although ROSSINI has a pre-paid debit card with Go Bank, he does not have a checking account with Go Bank, and the account number listed on Check 6 does not exist.

23. According to Witness SB from Wintrust Bank, between approximately June 2, 2017, and June 9, 2017, Witness SB had numerous phone calls and email exchanges with ROSSINI during which ROSSINI repeatedly claimed that he was arranging for wire transfers from his Go Bank account to Wintrust Bank to cover the deficit in Witness GS's account. None of the wire transfers that ROSSINI promised ever in fact happened, and Witness SB has had no further contact from ROSSINI as of June 9, 2017. Witness SB has provided the FBI with a copy of a saved voicemail message left for Witness GS on June 5, 2017, from an individual identifying himself as ROSSINI. I have listened to this voicemail message and recognize the caller's voice as ROSSINI's, with which I am familiar from in-person conversations with ROSSINI, as well as my review of various recordings of ROSSINI during the FBI's investigation of the fraud scheme giving rise to ROSSINI's indictment in Case Number 15 CR 515. In this voicemail, ROSSINI

apologizes to Witness SB for not wiring money to Wintrust Bank as promised. ROSSINI claimed in this message that he was waiting for funds from his family but would be wiring the money later on June 5, 2017.

24. After ROSSINI promised to "take responsibility" for Witness GS's debt to Bank B, he took a trip to Los Angeles, California.[6] During the trip, Witness GS communicated with ROSSINI through text messages that Witness GS showed to investigators, demanding that ROSSINI send money to cover Witness GS's debt with Wintrust Bank. During one of these conversations, ROSSINI told Witness GS that ROSSINI's brother would send a check to Witness GS at ROSSINI's business address and provided a tracking number via text message. When Witness GS went to pick up the envelope he observed that the check (Check 7), which was in the amount of $7,800 and was drawn on the same closed bank account belonging to Witness JP as Check 4, was made payable to ROSSINI, not Witness GS.

25. During the FBI's interview of Witness JP, they also showed him Check 7 and Witness JP confirmed that he did not authorize this check.

### Additional Apparent Check Fraud

26. After learning about ROSSINI's use of the above referenced bad checks, the FBI also identified and interviewed Witness MB, who knows ROSSINI through a mutual acquaintance and has performed some odd jobs for ROSSINI. According to Witness MB, in May 2017, ROSSINI owed Witness MB $5,000 because Witness MB had loaned ROSSINI that amount approximately one year earlier and ROSSINI had failed to repay Witness MB within 4-5 days, as promised. On or about May 23, 2017, ROSSINI provided Witness MB with a check for $5,300

---

[6] This trip was granted over the government's objection in 15 CR 515. Rossini's stated purpose for this trip was to visit family. According to Individual MA, this is not true, as ROSSINI was actually visiting a girlfriend (Individual DG).

9

written on a Go Bank account in ROSSINI's name (Check 8)[7]. ROSSINI told Witness MB that this Go Bank check would cover ROSSINI's debt with Witness MB. Witness MB then deposited Check 8 into Witness MB's Bank of America account and made a cash withdrawal of $5,300. According to Witness MB, at the time of this withdrawal Witness MB had enough money in his account to cover the $5,300 withdrawal, but several days later Witness MB determined that his account balance was approximately $5,000 lower than it should have been. Witness MB later learn from Bank of America that Check 8 was a bad check. According to Witness MB, Witness MB contacted ROSSINI about the bounced check, and ROSSINI has insisted the check was a good check but that ROSSINI would repay Witness MB. Witness MB has advised that he has contacted ROSSINI numerous times since the Check 8 bounced, and ROSSINI has repeatedly claimed that he would wire money to Witness MB's account, but to date ROSSINI has not done so.

## CONCLUSION

27. The FBI's investigation of ROSSINI's ongoing fraudulent activities is continuing. To date, investigators have been able to identify a total of at least 8 apparently fraudulent checks passed by ROSSINI to at least 6 different people and drawn on at least 4 closed, non-existent, or unauthorized accounts. These checks have a total face value of approximately $45,464, and to date, investigators have been able to confirm through witness interviews, bank records, and bank surveillance footage that ROSSINI personally received during that same time period at least $12,500 through the fraudulent acts recounted in this Affidavit.

---

[7] As with certain other checks, the FBI does not yet have a copy of Check 8, so it is not known whether it is drawn on the same purported account number as Check 5. In any event, as noted above, Go Bank has advised the FBI that ROSSINI has no checking accounts with Go Bank.

28. Based on the foregoing facts, I respectfully submit there is probable cause to believe that ALBERT ROSSINI has committed a criminal offense, namely, bank fraud, in violation of Title 18, United States Code, Section 1344.

FURTHER AFFIANT SAYETH NOT.

_____
JODY BLAU
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me on July 27, 2017.

_____
MICHAEL T. MASON
United States Magistrate Judge

11