UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **United States of America**, | |
| Plaintiff, | |
| v. | No. **1:17-CR-522** |
| **Albert Rossini**, | Judge John J. Tharp, Jr. |
| Defendant. | |

## Defendant Albert Rossini's Post-Trial Motion

Defendant Albert Rossini, through undersigned counsel, respectfully moves for this court to vacate the judgment and grant a new trial under Rule 33.

Federal Rule of Criminal Procedure 33 permits this Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[C]ourts have interpreted Rule 33 to require a new trial in a variety of situations in which trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). The applicable standard under Rule 33 requires a new trial "only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict." *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016).

During Mr. Albert Rossini's trial, the Government was permitted on several occasions—over defense counsel's objections—to admit evidence that is prohibited by Federal Rule of Evidence 408. *See* Tr. 7:16 to 9:4, 71:22 to 73:16, 82:14-16, 94:9-14, 121:12-20, 246:3 to 248:1, 328:3-7. The erroneously introduced evidence included testimony by Stein and Kruse, Mr. Rossini's own statements, and text messages between Stein and Mr. Rossini. This evidence was inadmissible pursuant to Rule 408 because it:

> (1) included offers or attempts to compromise a claim, and conduct or statements made in relation to those compromise attempts; and
>
> (2) was introduced to prove the validity or amount of the disputed claim in order to prove Mr. Rossini's liability and guilt.

Justice therefore requires that Mr. Rossini be granted a new trial in view of this erroneously admitted evidence. There is a substantial possibility that the evidence prohibited by Rule 408 had a prejudicial effect on the jury verdict, and thus, Mr. Rossini should be granted a new trial.

1. **Rule 408 prohibits compromise evidence used to prove the validity or amount of a disputed claim.**

Rule 408 excludes any evidence relating to compromise when such evidence is used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement." Fed R. Evid. 408 (eff. Dec. 1, 2011). Prohibited evidence includes:

> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement[s] made during compromise negotiations about the claim

*Id.* The 2006 Advisory Committee Notes to the Rule make clear that Rule 408 applies to both civil and criminal cases. *See id.*, advisory committee's note ("statements made during compromise negotiations of other disputed claims are not admissible in subsequent criminal litigation, when offered to prove liability for, invalidity of, or amount of those claims"); *see also United States v. Davis,* 389 U.S. App. D.C. 282, 291, 596 F.3d 852, 860 (2010) ("The 2006 amendment to Rule 408, [ ] made clear that the rule applied to both civil and criminal proceedings"). Moreover, excluding criminal cases from the purview of Rule 408 would be counter to its policy of the Rule, which aims to encourage the settlement of private matters. Fed. R. Evid. 408, advisory committee's note (citing and

quoting Fishman, *Jones on Evidence, Civil and Criminal*, § 22:16 at 199, n. 83 (7th ed. 2000)) ("a target of a potential criminal investigation may be unwilling to settle civil claims against him if by doing so he increases the risk of prosecution and conviction.").

Here, the Government introduced evidence of the validity and amount of disputed claims between Mr. Rossini and Guy Stein, and Mr. Rossini and Richard Kruse, for the purpose of proving Mr. Rossini's liability to Stein and Kruse, and then subsequently used this liability as evidence of Mr. Rossini's guilt. A "dispute need not crystallize to the point of threatened litigation for the 408 exclusion rule to apply." *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 965 (8th Cir. 2011) (citing *Affiliated Mfrs. v. Aluminum Co. of Am.*, 56 F.3d 521, 527 (3d Cir. 1995); *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1307 (11th Cir. 1985)); accord *Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 222 (4th Cir. 2020) (reasoning that "the value of promoting efforts to settle disputes that have entered the doors of a court applies all the more to disputes that haven't yet done so."). Stein and Kruse believed that Mr. Rossini owed them money, and the Government erroneously introduced evidence of Mr. Rossini's attempts to compromise the claims.

*United States v. Davis,* 389 U.S. App. D.C. 282, 291, 596 F.3d 852 (2010), which counsel relied on during trial, is instructive. Defendant Davis served as the treasurer of a fraternity and was accused of making out $29,000 worth of check "to cash," none of which were deposited in the fraternity's bank account. *Id.* at 853-54. At trial, over counsel's objection based on Rule 408, the new fraternity treasurer was permitted to testify about an offer made by Davis. The treasurer testified that in a conversation with Davis, Davis asked "'Can we just split this $ 29,000.00 and make this situation just go away?' …. I told him that [the] amount was in excess of a hundred thousand dollars," and told him if he wanted to negotiate a settlement, he should talk to their legal counsel or international president. *Id.* at 854 (ellipses in original). The court ruled that "there can be no doubt that Davis offered to compromise a disputed claim. His offer was to split the $29,000 in checks to cash he thought the fraternity had discovered." Moreover, the court

held that the Government intended to introduce Davis' settlement offer "in order to prove his guilty, or in the words of Rule 408(a), his 'liability.'" *Id.* at 859. The court ruled that all the statements made in compromise negotiations between Davis and the new treasurer were barred by Rule 408.

*United States v. Doxie*, 2014 U.S. Dist. LEXIS 109131 (N.D. Ga. June 18, 2014), is similarly instructive, as it also applies Rule 408 in the criminal context. Defendant Doxie's employer, Ennis, became concerned about possible embezzlement by Doxie. *Doxie*, 2014 U.S. Dist. LEXIS 109131, at *3. The parties each communicated through their respective attorneys, with Ennis' attorney specifically stating that in those communications that these were not "settlement negotiations, but rather a voluntary exchange of information," and Doxie's attorney making it clear that he was trying to settle the dispute. *Id.* at *6, *8. During the "investigation" Ennis and its attorney were not working with law enforcement, but subsequently turned over the information they gathered to the FBI. *Id.* at *8. The Government moved to include the statements from Doxie's attorney to Ennis' attorney, while Doxie moved to exclude the evidence under Rule 408.

      The district court ruled that there was "no question that the parties were in a civil dispute" because "Ennis believed that Doxie owed it money for the personal charges on credit card and the false invoices from Outlook," and Ennis' attorney's first email was "a demand for payment of credit card charges." *Id.* at *11-12. Moreover, the court ruled, the communications were sent for the purpose of settling the dispute, as indicated by the testimony of Doxie's attorney, the communications themselves, and logical inferences. *Id.* at *13-14. Furthermore, the court noted that it did not matter whether the statements made were offers, or "facts disclosed to promote a settlement," as such disclosures are necessary for settlement. *Id.* at *12. The court thus ruled that the communications should be excluded under Rule 408. *Id.* at *20.

2. **There were disputed claims between Mr. Rossini and the witnesses Kruse and Stein.**

Similarly, here, the communications between Rossini and witnesses Stein and Kruse should have been excluded as evidence of compromise under rule 408. Beginning with Stein, Stein testified that the text messages between him and Mr. Rossini, Government's Exhibit 101, discussed a $6,500 debt that Stein alleged Mr. Rossini owed him. Tr. 136:22 to 137:5. Stein testified "I got screwed," referring to the "$6,500 I handed him in the bank that wasn't his." In response to Stein's demand for the money, Mr. Rossini texted, "I will get 6500 and a lot more for you." Tr. 137:9-19, Gov. Ex. 101. Stein then testified that he interpreted MR. Rossini's message to mean "Guel [Stein' prior debtor] never paid me and he's going to pay what he pays me and a lot more." Tr. 138:3-5. Stein believed the amount of the disputed claim was $6,500, and Mr. Rossini offered to settle a disputed claim for "6500 and a lot more."

As a result of Rossini's promise to pay back the $6,500 "and a lot more," Stein testified that he expected a check from Rossini, and eventually an envelope arrived with a check in the amount of $7,800, made out to Mr. Rossini. Tr. 140:6 to 141:2. The Government further questioned Stein about text messages in which Stein requested Rossini pay him via Western Union, and Stein stated that Rossini "did send some" payment, but Stein never received "full payment." *See* Tr. 142:11-25

As in *Doxie*, there was no question that there was a civil dispute between Mr. Rossini and Stein, who believed that Mr. Rossini had "screwed" him out of $6,500 by depositing a bad check in his account. Like the courts ruled in *Doxie* and *Davis,* these communications, and Stein's related testimony, were communications made for the purpose of settling the dispute. Just as the defendant in *Davis* offered to settle the dispute for half of the $29,000, here, Mr. Rossini offered to settle his dispute with Stein for $6,500 and "a lot more." Tr. 137:9-19, Gov. Ex. 101. Mr. Rossini's and Stein's communications were an attempt to compromise a claim in which Mr. Rossini offered to pay Stein over what he believed he was owed, and thus falls squarely within Rule 408. Mr.

Rossini (and Stein) were "promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration," which in this case was "$6500 and a lot more." *See* Fed. R. Evid. 408(a)(1). It was therefore error to permit the Government to introduce Mr. Rossini's promises and offers to Stein, along with Stein's and Mr. Rossini's "conduct and statements" made during these compromise negotiations, and the check itself, to establish the validity, and amount, of the debt between Stein and Mr. Rossini. *See* Fed. R. Evid. 408(a)(1)-(2)

Similarly, evidence was admitted via witness Richard Kruse in violation of Rule 408. Here, Kruse made a demand to Mr. Rossini in compromise negotiations, and Rossini, without admitting liability for the debt, paid back the amount Kruse believed he was owed. Specifically, Kruse testified that he discovered a check had been paid from his IOLTA account that he did not authorize, and the check was made out to Mr. Rossini for $1,800. Tr. at 261:3-8. Upon discovering this, Kruse testified that he "confronted Mr. Rossini" in person and demanded that he "[b]ring back the money." Tr. at 261:5-12. The very next day, according to Kruse, Mr. Rossini met him at Chase Bank and gave him $1,800. Tr. at 261:16–17.

This evidence is exceedingly like that which was barred in *Davis*, where the defendant never admitted his liability for writing the checks to cash but offered to settle for half of the amount. Here, Kruse's confrontation with Mr. Rossini was a demand that the situation would be settled if Mr. Rossini immediately paid the money back. This testimony was evidence of compromise negotiation to settle a perceived wrong against Kruse, however, the existence of this debt was introduced to show the validity of, and amount of the debt between Kruse and Rossini, in violation of Rule 408.

3. **The Government introduced evidence of compromise for the sole purpose of proving the validity and amounts of the claims.**

The Government's theory of the case was that Mr. Rossini committed bank fraud to pay back debts to Stein, Krause, and Matan Braushtein. The Government first raised this

theory in the indictment, arguing that as part of the scheme, Mr. Rossini "provided the fraudulent checks to various individuals for the purpose of preventing or delaying those individuals from *taking adverse action on debts* ROSSINI owed them." Dkt. 102, ¶ 4. The Government maintained this theory throughout trial, where it argued repeatedly to the jury that Mr. Rossini's attempts to compromise these debts were evidence of his guilt. *See e.g.*, Tr. 280:13 to 281:7; 280:24-25 ("The defendant's plan was to use bad checks to get money and to get people he owed money to off his back").

To present this theory to the jury, the Government not only introduced evidence of compromise as described in Rule 408, and above, but it additionally *relied* on this evidence to establish the fact that Mr. Rossini owed debts to these people, in specific amounts. Put in the terms of Rule 408, the Government used the compromise evidence to "prove or disprove the validity or amount of a disputed claim" between Mr. Rossini, Stein, and Kruse. The Government further insisted, and presented to the jury, that the existence of these disputed claims was evidence of Mr. Rossini's guilt. The following arguments, which are direct quotations made by the Government in closing, depict the Government's improper reliance on compromise evidence:

- "[Mr. Rossini] set out on a scheme to defraud his friends, associates, and banks by manipulating people into thinking *they were getting something from him*, but they weren't." Tr. 304:24 - 305:1

- "And that's the voicemail where the defendant promised Boerma that he was going to be wiring the money in two different wires, one for $3,900 and another for $7,500. That is the defendant taking ownership over the loss here. That is the defendant *acknowledging that he is the one who owes the money* as to these fake bogus checks." Tr. 328:3 - 5

- "I also want you to look at what happened on May 26, 2017. This is the day he took $6,500 in cash from Guy Stein. On that day, the defendant added $1,600 to the Go Bank debit card. This is by far the largest credit to his debit card that wasn't a Social Security payment. This is all laid out in Government Exhibit 34A, which you heard Special Agent Shanahan testify about." Tr. 292:1 – 7

- "*He owed Stein money*, and you saw from the text messages, Stein was pretty persistent. *The defendant wanted to get him off his back*, so he put together this trio of bad checks." Tr. 298:21-25.

- "And Kruse told you that *he confronted the defendant* about that, *and the defendant paid him back*. So the defendant had the checks, and Kruse didn't give them to him. The inference is not a difficult one. The defendant stole the checks." Tr. 288:21 – 25

- "[Y]ou heard from Kruse himself that the defendant *acknowledged using this check* when Kruse confronted him *by paying him back*. There was no—there is no doubt that the defendant stole, forged, and cashed this check, Government's Exhibit 11." Tr. 300:15 – 19.

As these excerpts show, the Government expressly relied on the communications Mr. Rossini made with Stein and Kruse as evidence of the validity of the debt and the amount of the debt, and explicitly argues to the jury that this is direct evidence of Mr. Rossini's guilt. As in *Davis*, the evidence of compromise should have been excluded under Rule 408 because it was used "in order to prove his guilt, or in the words of Rule 408(a), his 'liability.'" *Davis,* 596 F.3d at 859.

## Conclusion

To conclude, Mr. Rossini must be granted a new trial pursuant to Fed. R. Crim. P. 33(a) because the Government was erroneously permitted to admit evidence that is barred by Federal Rule of Evidence 408. Therefore, the Court should vacate the conviction and grant a new trial.

Respectfully Submitted,

/s/ Erin L Sostock
Attorney for Albert Rossini

James G. Vanzant
Holly N. Blaine
Erin L. Sostock

Blaine & Vanzant, LLP
922 Davis Street
Evanston, Illinois 60201
Tel.: (312) 788-7584
E-mail: els@blainevanzant.com
E-mail: jgv@blainevanzant.com
E-mail: hnb@blainevanzant.com