UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALBERT ROSSINI | 17 CR 522<br><br>Hon. John J. Tharp |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S POST-TRIAL MOTION**

Defendant Albert Rossini was convicted by a jury of four violations of bank fraud, and the Court separately found that a sentencing enhancement under 18 U.S.C. § 3147 applied because defendant had committed the crimes of conviction while on pretrial release. R. 165. Defendant now moves the Court to vacate the judgment and grant a new trial under Federal Rule of Criminal Procedure 33. R. 184. Defendant's motion is based on the admission of evidence that he argues should be excluded under Federal Rule of Evidence 408. *Id.* The Court properly admitted the statements in question because there was no dispute as to the claims referenced in those statements, as required by Rule 408. *See* Tr. 73:12–73:16. The United States respectfully requests that the Court deny defendant's motion for the same reason. Further, some of the evidence on defendant's preexisting debts was introduced for purposes other than to show the validity of the debts, and if there had been error, it would not have prejudiced defendant.

BACKGROUND

I. **RULE 408 SEEKS TO PROMOTE RESOLUTION OF DISPUTED CLAIMS**

Rule 408(a)(1) reads:

> (a) Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim . . . .

For Rule 408 to apply, a party must "make a substantial showing" that the communication in question was part of a settlement attempt. *Raybestos Products Company v. Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995) (internal quotation marks omitted).

The purpose of the rule is to promote "the public policy favoring the compromise and settlement of disputes." Rule 408 Notes of Advisory Committee. "The policy considerations which underlie the rule do not come into play when the effort is to induce a creditor to settle an admittedly due amount for a lessor sum. Hence, the rule requires that the claim be disputed as to either validity or amount." *Id.* (internal citation omitted); *see also*, *United States v. Meadows*, 598 F.2d 984, 989 (5th Cir. 1979) (finding Rule 408 did not apply when "the prosecution merely made use of a direct admission"); *Bank of America v. Sea-Ya Enterprises*, 872 F.Supp.2d 359, 363 (D. Del. 2012) (allowing evidence where "[d]efendants did not contest they were in default of their obligations").

Even absent an admission, a party agreeing to give a counterparty everything the counterparty wants cannot be considered a part of compromise negotiations.

2

*Rodriguez-Garcia v. Municipality of Caguas*, 495 F.3d 1, 12 (holding no dispute existed when communication consisted of capitulation to claim). "For Rule 408 to apply, there must be an actual dispute, or at least an apparent difference of opinion between the parties, as to the validity of a claim." *Dallis v. Aetna Life Insurance Company*, 768 F.2d 1303, 1307 (11th Cir. 1985) (holding that Rule 408 did not apply when an insurance company paid an insurance claim without disputing it); *see also*, *United States v. 8.9 Acres of Land in Arlington County, Virginia*, 36 F.4th 240 (4th Cir. 2022) ("[T]hat rule is inapplicable where, as here, there was no disputed claim at the time the statement in question was made."). No dispute arises until a party rejects the claim of a counterparty. *S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District*, 50 F.3d 476, 480 (7th Cir. 1995) (holding initial claim for price adjustment did not trigger dispute and Rule 408).

## II. THE COURT OVERRULED DEFENDANT'S OBJECTIONS BECAUSE THERE WAS NO DISPUTE AS TO THE VALIDITY OR AMOUNT OF THE CLAIMS

Defendant defrauded banks by depositing and causing others to deposit checks that defendant knew had no value. After those checks bounced, defendant acknowledged responsibility for the losses by promising to repay the missing money in full, or by actually repaying the money. Before trial, defendant objected to the admission of evidence relating to his promises and actions related to repayment of debts. Tr. 4:16–5:11. The Court noted in response that:

> discussing the repayment of an acknowledged debt doesn't fall within the ambit of 408. 408 is so that you can have a discussion about a disputed debt that does not – you know, cannot be taken as evidence that you, in fact, owed the debt. That doesn't sound like what we're dealing with here. It sounds like what we're dealing with is an acknowledged debt that Mr. Rossini is promising to pay, not disputing that he owed the obligation, but promising to pay it.

3

Tr. 7:6–7:15.

After an additional proffer from defense counsel preceding the testimony of Scott Boerma, the Court overruled defendant's objections, noting that the Court did not "hear anything in the proffer to suggest that there was actually a dispute about what was owed or that there was an attempt to compromise the dispute about the debt, which seems to be the requirement under Rule 408." Tr. 73:12–73:16. Defendant renewed his objection at various points throughout the trial when testimony or exhibits were presented regarding defendant's statements and actions to repay his debts, and the Court overruled those objections on the same grounds. *See* Tr. 71:22–73:16, 82:14–82:16, 94:9–94:14, 121:12–121:20, 246:3–248:1, 328:3–328:7.

## ARGUMENT

### I. THERE WAS NO DISPUTE OVER DEFENDANT'S DEBTS, SO RULE 408 DOES NOT APPLY

The Court was correct to overrule defendant's objections because there was no disputed debt, and should deny defendant's motion for the same reason. The rule, advisory committee notes, and caselaw all establish that a dispute is required.

For each of the referenced debts, defendant did not dispute the fact that he was responsible for the money. Instead, he acknowledged that he was responsible through his words and actions. This was not even the situation, contemplated by the committee notes, where a party was trying to negotiate a lesser settlement of an acknowledged debt. *See* Rule 408 Notes of Advisory Committee. Even then, Rule 408 does not apply, but the testimony here is further still from the conduct encompassed

4

by Rule 408; defendant insisted that he would pay the amount he owed in full, and in one instance did just that.

Defendant references a variety of testimony in his motion; there is no evidence of a dispute for any of the referenced debts.

### A.     Boerma Testimony and Voicemail

Scott Boerma testified about several statements that defendant made to Boerma, and a voicemail left by defendant for Boerma was admitted as evidence. Tr. 82:14–83:4, 94:9–94:14.  Defendant's objections to Boerma's testimony and the admission of the voicemail were overruled. *Id.*

Boerma testified that defendant "had stated that it was -- he was just apologizing, saying that it was a misunderstanding, and that he was going to wire transfer the funds to cover that check." Tr. 82:20–82:22.  Boerma further testified that defendant had called Boerma a second time, and in that call "he was again apologetic." Tr. 83:1.  The voicemail itself consisted of defendant apologizing for not sending the money earlier: "That money that was supposed to go on, come in on Friday late is actually coming in this afternoon late.  I'm, I'm sorry I couldn't… uh… do any better than that because of… uh relatives that are sending it out from my account out there." Response Ex. 1, Voicemail Transcript, GX 202T.

Defendant did not dispute that he owed the bank money in either the voicemail or his prior communications with Boerma.  Quite the opposite.  He apologized, acknowledged a responsibility to pay, and said that he was going to pay the amount in full.  He offered excuses as to why he had not yet paid.  None of defendant's statements to Boerma were attempting to compromise a disputed claim.  A

5

compromise involves two parties agreeing to something other than what each of them ideally wants. One party promising to give the other party what they want is not an attempt at compromise.

### B. Stein Testimony and Text Messages

Guy Stein testified that defendant told Stein that he would repay the money. Again, defendant did not claim that he did not owe money because of the bounced checks. He assured Stein that he would take care of it, leading to an obvious inference that he would take care of it because he was responsible. Defendant's communications to Stein via text were in the same vein. They consist of promises by defendant to pay money that he owes to Stein; there are no messages disputing that defendant owes Stein, or the bank on Stein's behalf.

There are two different debts referenced in the text messages. The first is a preexisting debt that Stein expected to be paid out of the proceeds of a real estate deal, or else directly from defendant after defendant received his Social Security check. Tr. 123:3–123:23. As discussed in Section II below, this testimony was not actually introduced to prove the validity of the debt; regardless, there is nothing that indicates the debt was disputed or that defendant was attempting to compromise a disputed claim. As with the debt more directly linked to the conduct of conviction, defendant acknowledged the preexisting debt and promised to pay Stein.

That debt directly linked to the conduct of conviction was for the money related to the bad checks, and the $6,500 in cash that Stein had given defendant out of Stein's account. Stein testified that defendant told Stein that "he was going to get it all taken care of" when Stein confronted him about the three bad checks. Tr. 136:3–136:4. In

a text message, defendant said that he would get Stein the $6,500 from the withdrawn cash, and a lot more. Tr. 137:18. Nowhere in the texts did defendant dispute that he owed Stein money, and defendant has pointed to no evidence that this was a disputed claim.

### C. Defendant's Affidavit Regarding Braunshtein Loan

Defendant's motion and initial objection included reference to a preexisting debt that defendant owed Matan Braunshtein for repayment of a loan. *See* R. 184 at 1; Tr. 4:20–5:1. The Court admitted defendant's affidavit, which stated in part "Rossini wrote a check to Matan Braunshteyn on or about May 23, 2017 from the account of Albert Rossini in the amount of $5,400 in payment of a loan that Mr. Braunshteyn had made to Rossini."[1] Response Ex. 2, Rossini Affidavit, GX026. As with the preexisting Stein debt, this evidence was not admitted for the purpose of proving the validity of the loan. *See* Section II below. Neither was the check in question consideration compromising a disputed claim. Defendant's own affidavit states that the check was in repayment of a loan; he does not refer to it as a settlement payment or anything else that would suggest that the check was valuable consideration in compromising a disputed claim.

### D. Kruse Testimony

Richard Kruse testified about several checks defendant stole from Kruse's office, including by stating that he "confronted Mr. Rossini" and told him to "[b]ring back the money" after Kruse realized that defendant had cashed a check from Kruse's

---

[1] Defendant did not renew his objection when the affidavit was introduced. Tr. 167:1–167:5. ("THE COURT: Any objection?; MR. VANZANT: No, Your Honor.")

7

bank account. Tr. 261:5–261:7. This demand for repayment of money that defendant stole was not evidence of a dispute; the fact that defendant *did* repay Kruse for the stolen money indicates that defendant did not dispute the debt. Tr. 261:16–261:17.

Defendant says that "Kruse made a demand to Mr. Rossini in compromise negotiations," but saying it does not make it so. *See* R. 184 at 6. "A bill that itemizes what the sender thinks the recipient owes him and demands . . . payment is not an offer in settlement . . . and hence is not excludable by force of Rule 408." *Winchester Packaging v. Mobil Chemical*, 14 F.3d 316, 319 (7th Cir. 1994). Kruse made a demand of defendant, and defendant complied. That is not a dispute.

### E. *Davis* and *Doxie* Are Distinguishable

Defendant attempts to match his case to two cases where courts held Rule 408 to apply. *See* R. 184 at 3–6. There were clear disputes in those cases that led to compromise negotiations and the application of the rule. There is no such dispute here.

In *United States v. Davis*, 596 F.3d 852, 853–854 (D.C. Cir. 2010), Terry Davis had embezzled from his fraternity and was confronted by the fraternity's treasurer, Hammock. The court summarized:

> Hammock told Davis the fraternity had found $29,000 in checks made out to cash, none of which was deposited in the fraternity's bank account as Davis had claimed . . . . [Hammock testified,] 'Terry asked—he said, 'Can we just split this $29,000.00 and make this situation just go away?' . . . . I told him that [the] amount was in excess of a hundred thousand dollars. Terry's statement to me at that point was, 'I can't afford to pay that amount,' and then I told him—I said, 'Terry, if you want to do some—negotiate some kind of settlement, you need to talk to our legal counsel or our international president.'"

*Id.* at 854.

8

The court further noted that the claim was disputed, that Davis's stance was that he was not responsible for the missing money but that his offer was nonetheless "to split the $29,000 in checks to cash he thought the fraternity had discovered." *Id.* at 859. This was an affirmative dispute. The parties disagreed about whether money was owed, and were haggling over how much Davis could pay to "make this situation just go away". *Id.* at 854. Offering to split the money is a classic compromise offer. The D.C. Circuit noted that Hammock considered it as such, because he directed Davis to contact the fraternity's lawyer if he "wanted to settle the matter." *Id.* at 860.

No similar facts are present here. Far from disputing that he owed his various debts, defendant repeatedly promised to pay them in full. Whereas Davis said that he had deposited the cash into the fraternity's account, and therefore did not owe anything, defendant admitted that he had not paid Stein or the bank, and made apologies and excuses for that fact. Defendant had no back and forth with Kruse, Stein, or the bank about how much he should pay. All parties involved seemed to believe that defendant should pay the full amount, because he owed the full amount. There was no testimony that any of the parties thought they were engaged in compromise negotiations, and no language indicating compromise.

Defendant in his motion mentions that defendant said he would pay Stein "$6,500 and a lot more," as if defendant suggesting a higher value than the amount of cash he took indicated a negotiation. It did not. This was not like Davis offering half of what Davis thought was the disputed sum to make the situation go away. This was Stein saying that he would pay back the $6,500 that he admitted he owed based

9

on the cash withdrawal, and the "lot more" referred to the other money that defendant owed. The promise was not contingent on getting anything from Stein, it was simply an acknowledgment that defendant owed Stein money and would pay it.

Defendant also compares his case to *United States v. Doxie*, 2014 WL 3845699 (N.D.G.A. June 18, 2014). R. 184 at 4–5. In that case, there was, in the court's words, "a genuine dispute between the parties." *Id*. at *12. "[Doxie's employer] believed that Doxie owed it money for the personal charges on credit card [sic] and the false invoices from Outlook." Id. at *9. The company's lawyer emailed Doxie demanding payment. *Id*. "In response, Doxie contended that some of the credit card charges that [the company] listed as personal were for company business. Doxie also contended that the Outlook invoices were legitimate." *Id*. (internal citation omitted).

There was no similar back and forth regarding any of the debts that defendant references here. He did not deny that he owed the money or claim that he should not have to pay. There was simply no "genuine dispute" as to the debts.

## II. DEFENDANT'S PREEXISTING DEBTS TO STEIN AND BRAUNSHTEIN WERE NOT OFFERED TO PROVE THEIR VALIDITY

While none of defendant's debts were disputed and Rule 408 does not apply to them for that reason, Rule 408 is inapplicable to defendant's preexisting debts for another reason as well. Rule 408 precludes evidence of compromise for disputed claims "either to prove or disprove the validity or amount" of the claim. Federal Rule of Evidence 408. "Although statements made in settlement negotiations are inadmissible to prove liability on the underlying claim, they may be admissible for

10

other purposes." *Wine & Canvas Development v. Muylle*, 868 F.3d 534, 540 (7th Cir. 2017).

Here, the validity of defendant's debt to Stein that Stein expected to be paid from real estate revenue and the validity of defendant's loan to Braunshtein were not at issue. Those debts were offered to explain why Stein was on defendant's back about receiving money, and why defendant would have written a check to Braunshtein. Even if those debts had been disputed and the communications had been attempts at compromise, they still would be admissible. "Where the settlement negotiations and terms explain and are a part of another dispute they must often be admitted if the trier is to understand the case." *Central Soya Co. v. Epstein Fisheries*, 676 F.2d 939, 944 (7th Cir. 1982) (internal quotation omitted).

The evidence relating to defendant's preexisting debts helped the jury understand the context in which defendant's fraud took place. Whether those debts were valid was not at issue. Defendant's guilt was dependent on what he did to repay those debts, whether or not they were valid. "[W]hen a settlement discussion concerns Claim A, and statements from that discussion are later offered to prove or disprove liability on Claim B, Rule 408(a) does not make those statements inadmissible." *Wine & Canvas*, 868 F.3d at 541. In this case, Claims A, the preexisting debts, could be used in the trial for Claims B—the debts incurred through the scheme to defraud. This provides an additional reason why Rule 408 does not preclude admission of the Stein texts and defendant's affidavit.

### III. EVEN IF THE ADMISSION OF EVIDENCE RELATED TO DEFENDANT'S DEBTS WAS ERROR, IT WAS NOT PREJUDICIAL

While the admission of evidence of defendant's various undisputed debts was not error, even a finding of error would not require granting defendant's motion. "A defendant is only entitled to a new trial if there is a reasonable possibility that the evidence had a prejudicial effect upon the jury's verdict." *United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996). That is, the Court must believe that the jury might have reached a different conclusion on defendant's guilt had the evidence been excluded. *United States v. Reed*, 986 F.2d 191, 193 (7th Cir. 1993) (finding no prejudice where agent testified misleadingly about his involvement in a photo lineup). The Court should look to the "totality of the evidence" in exercising its discretion to determine if there was prejudice. *See United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016) (finding no prejudice in part because of evidence corroborating defendant's participation in the charged conduct).

The totality of the evidence here indicates that the jury would have returned guilty verdicts even without the evidence that defendant now challenges. The core of the evidence establishing defendant's guilt was on paper and on video.

Defendant's statements to Boerma and Stein accepting responsibility following his deposit of the checks certainly establish that defendant was the person who deposited the bad checks. But defendant is also on video depositing the checks. Similarly, defendant's signature is on the check that he gave Braunshtein in repayment of a loan. As discussed in section II. above, defendant's statement that the check was in repayment of a loan provides context; however, the jury did not have

12

to rely on defendant's affidavit to believe that a check from defendant's made-up account with defendant's signature on it came from defendant. And the Kruse check was deposited by defendant. Kruse's testimony that he did not sign the check, and Arthur Feldman's testimony that defendant deposited it, definitively established that defendant had stolen, forged, and deposited the check. This is true with or without the evidence that defendant repaid Kruse for the stolen money.

The challenged evidence did not prejudice defendant because its absence would not have changed the jury's verdicts. While Rule 408 does not apply to any of the challenged evidence, defendant's motion would be rightly denied even if the evidence had been improperly admitted.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion.

                Respectfully submitted.

                MORRIS PASQUAL
                Acting United States Attorney

By:   */s/ Paul Schied*
       PAUL SCHIED
       Assistant United States Attorney
       219 South Dearborn Street
       Fifth Floor
       Chicago, Illinois 60604
       (312) 697-4091

Dated: January 25, 2024