**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CR 522 |
| | ) | |
| ALBERT ROSSINI, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>ORDER</u>

Defendant's post-trial motion pursuant to Federal Rule of Criminal Procedure 33 [184] is denied. See Statement for details. The sentencing hearing will be held on Friday, September 20, 2024 at 10:00 a.m. in Courtroom 2303.

## <u>STATEMENT</u>

Defendant Albert Rossini was convicted by a jury on four counts of bank fraud, in violation of 18 U.S.C. § 1344. The scheme involved the creation, deposit, and cashing of fraudulent checks totaling more than $40,000 to deceive several people to whom Rossini owed money into believing that they had been paid back. The checks Rossini used included checks that he had stolen and forged, checks drawn on closed accounts, and checks drawn on an account that never existed. Rossini moves for a new trial pursuant to Rule 33, claiming that various statements that were introduced into evidence against him should have been excluded under Rule 408 as evidence of efforts to compromise disputed claims.

The evidence (the sufficiency of which the defendant has not challenged with a motion pursuant to Rule 29) established that in 2017 Rossini owed $5300 to Matan Braunshtein and $6,500 to Guy Stein. Rossini gave Braunshtein a check, purportedly drawn on an account at an online bank (Go Bank), to repay a loan he had received from Braunshtein, but the check bounced because the account it was written on did not exist at Go Bank.[1] The government's evidence included an affidavit that Rossini had provided acknowledging that he had written a check to Braunshtein "in payment of a loan that Braunshtein had made to Rossini." GX 26. No evidence

---

[1] The evidence showed that Rossini had asked a friend, an accountant with an office in the same building where Rossini officed, to print the check using the accountant's check writing software. The evidence that Rossini's creation of this bogus check was intentional rather than inadvertent was substantial.

was introduced at trial suggesting that Rossini disputed that he owed that amount to Braunshtein or tried in any way to settle his debt to Braunshtein for anything less than the full amount he owed.

As for Stein, he testified that Rossini repeatedly acknowledged the debt and assured Stein that he would be paid back in full. The government introduced a string of text messages between Stein and Rossini in which Rossini told Stein that he (Rossini) would be able to pay him (Stein) from the proceeds of a cashier's check he was due to receive from a real estate closing. As Rossini told Stein that the deposit would be more than the amount he owed Stein, Rossini and Stein agreed to meet at Stein's bank the next day so that, after confirming that the check had been deposited and credited to his account, Stein could withdraw the excess and give it to Rossini. There was no cashier's check, however; instead, Rossini had deposited into Stein's account two different checks drawn on closed accounts at two different banks. But the bank initially credited the checks to Stein's account and before the bank, and Stein, learned that the checks were no good, Stein withdrew $6500 as the supposed excess and handed it to Rossini. There was no evidence that Rossini ever disputed the amount he owed Stein or ever attempted to settle with Stein for less than he owed.

When the bank discovered that the checks Rossini had deposited were no good, a bank manager, Scott Boerma, contacted Rossini to recover the funds Rossini had received from Stein's account. Boerma testified that Rossini was very apologetic, "saying that it was a misunderstanding and that he was going to wire transfer the funds to cover that check." The evidence also included a voice mail message Rossini left for Boerma to the same effect. Again, there was no evidence that Rossini ever denied that he owed the bank the $6500 he obtained based on the fraudulently inflated account balance; rather he promised that he would pay back the $6500 "and more."

The evidence also established that Rossini had stolen one of the fraudulent checks he deposited into Stein's account. Rossini had a relationship with an attorney, Richard Kruse, who officed in the Lincolnwood office building in which Rossini maintained an office. Kruse testified that he allowed Rossini to use the printer in Kruse's office from time to time, even when Kruse was not present. Kruse had two checkbooks for different bank accounts in a desk drawer; one of the accounts was closed by 2017; the other was open. Kruse testified that several checks for each of those two accounts had been stolen and the evidence at trial , including video, established that Rossini had deposited a check from Kruse's closed account into Stein's account at Wintrust Bank the day before he and Stein went to the bank together. The evidence also included testimony from the manager of a currency exchange who cashed a check presented by Rossini in the amount of $1800 that was drawn on Kruse's open account. Kruse testified that he confronted Rossini about this theft after he discovered that Rossini had cashed a check from Kruse's account and demanded repayment. Again, there was no evidence that Rossini disputed Kruse's claim and the evidence established that Rossi paid back the full $1800.

On the morning the trial began, Rossini sought to exclude two exhibits (GX 101 and 202) on the ground that the statements were barred by Federal Rule of Evidence 408 as offers to compromise or settle claims. Tr. 7/24/23 at 3-8. Subsequently, the defendant identified several additional statements with Stein and Kruse about the debts he owed to them that the defense asserted should be barred by Rule 408. *Id*. at 71-73. The Court ruled that the evidence cited in the defense proffer did not reflect an effort to compromise a disputed claim and therefore did not fall within the ambit of Rule 408. *Id*. at 73-74. During the trial, the defense also objected to the following testimony:

- Tr. 7/24/23 at 82-83: Boerma testimony that Rossini "was just apologizing, saying that it was a misunderstanding, and that he was going to wire transfer the funds to cover that check."

- Tr. 7/25/23 at 246-47: Kruse testimony that he confronted Rossini about the $18000 check that had been cashed at the currency exchange "and told Rossini to replace the $1,800 within 24 or 48 hours" and that "within a few days, Rossini paid Kruse 1800 in cash."

The defense also objected to the government's rebuttal argument that the voice mail message Rossini left for Boerma on June 5 (GX 202) was evidence of "the defendant taking ownership over the loss here."

Rossini's invocation of Rule 408 is entirely misplaced. The rule bars the introduction of evidence of offers to compromise disputed claims for the purpose of proving the validity or amount of such claims; it expressly applies only to efforts to settle disputed claims—not to debts that are acknowledged to be owed. As the Court explained during the trial, "discussing the repayment of an acknowledged debt doesn't fall within the ambit of [Rule] 408. [The purpose of Rule] 408 is so that you can have a discussion about a disputed debt that . . . cannot be taken as evidence that you, in fact, owed the debt." Tr. 7:6-10. In this way, the rule encourages and promotes settlement discussions. *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 50 F.3d 476, 480 (7th Cir. 1995) ("The purpose of the rule is to facilitate the settlement of disputes by encouraging the making of offers to compromise.").

But where there is no claim in dispute, and no offer to compromise the debt asserted, the rule has no application. Thus in *S.A. Healy Co.*, the Seventh Circuit held that the rule did not bar admission of a statement by an employee of the defendant company who acknowledged that the plaintiff's claim for a price adjustment probably had merit because at that point the defendant had not rejected the claim. "A dispute arises," the Seventh Circuit held, "only when a claim is rejected at the initial or some subsequent level. *S.A. Healy Co.*, 50 F.3d at 480. The court of appeals went on to explain that, "[h]ad the sewage authority accepted Healy's claim for a price adjustment, no

dispute would have arisen. And it follows that until the rejection of that claim, no dispute *had* arisen. When the engineer remarked to Healy that its claim probably had merit, the claim had not yet been rejected. There was not yet a dispute and Rule 408 was inapplicable. *Id. See also*, *e.g.*, *Raybestos Prod. Co. v. Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995) ("The letter was dated approximately eight months before Raybestos filed suit against Younger and TransGo. Therefore, even assuming Younger intended that the letter would avoid *potential* litigation, the timing as well as the contents of the letter strongly suggest that settlement "discussions," in any reasonable sense of the word, had not begun."); *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 258 (4th Cir. 2022) (Rule 408 not applicable in eminent domain proceeding to bar evidence of the parties' negotiations over required compensation "where, as here, there was no disputed claim at the time the statement in question was made."); *Rodriguez-Garcia v. Municipality of Caguas,* 495 F.3d 1, 12 (1st Cir. 2007) (district court erred as a matter of law in excluding evidence under Rule 408 where statements at issue did not dispute the claim asserted); Dallis v. Aetna Life Ins. Co., 768 F.2d 1303, 1306-07 (11th Cir. 1985) (Rule 408 did not bar evidence of insurer's payment of claim without dispute); *In re B.D. Int'l Disc. Corp.*, 701 F.2d 1071, 1074 (2d Cir. 1983) ("At the time of negotiation B.D.I. did not dispute Chase's claim; it was simply endeavoring to get more time in which to pay. *See* 2 Weinstein's Evidence ¶ 408[01] at 408–410 (1981).").

"For Rule 408 to be applicable, defendants needed to make a substantial showing that the letter was, in fact, part of a settlement attempt." *Raybestos Prod. Co.*, 54 F.3d at 1241. Rossini falls well short of making such a showing. As noted above, there was no evidence at trial that Rossini disputed in any way that he owed debts to Braunshtein, stein, Wintrust bank, or Kruse or that he sought to negotiate settlements with any of them. Rossini didn't dispute these debts; he admitted them—albeit while trying to defraud his debtors about his ability to pay them back. That is hardly the conduct that Rule 408 seeks to promote.

Rossini relies on two cases, both of which are easily distinguished (indeed, they are polar opposites to this case). In *United States v. Doxie*, No. 1:13-CR-101-WSD-GGB, 2014 WL 3845699, at *12 (N.D. Ga. Aug. 5, 2014), the court held that Rule 408 applied because "there was a genuine dispute between the parties as to whether the credit card charges and the Outlook invoices were valid," and the defendant's statements (made through his attorney) were expressly characterized as "offers to compromise." And in *United States v. Davis*, 596 F.3d 852 (D.C. Cir. 2010), the statements at issue were made by Davis, the national treasurer of a fraternity, who had been advised that his fraternity had discovered $29,000 in checks he had written to cash, none of which had been deposited in the fraternity's bank account as Davis had previously claimed. The statements included an offer to split the difference to "make this situation just go away" and a claim that he could not afford to pay what the fraternity claimed that he owed. *Id*. Holding that Rule 408 barred admission of those statements, the D.C. Circuit observed that "[t]here can be no doubt that Davis offered to compromise a disputed claim. His offer was to split the $29,000 in

checks to cash he thought the fraternity had discovered. The claim 'was disputed as to validity or amount,' Fed. R. Evid. 408(a): Davis did not confess to taking the fraternity's money; he said that he had deposited the cash checks into the fraternity's payroll account; and [the fraternity] rejected Davis's explanation." *Id*. at 859.

While Doxie and Davis did not admit the validity or amounts of the debts asserted against him, Rossini plainly did, and the government was entitled to introduce Rossini's false promises to repay his debts as evidence that he owed the debts. There is not an iota of evidence that Rossini ever claimed that he did not owe the amounts asserted by those he defrauded or that he engaged in any negotiations to pay less than the full amount he owed. Instead, Rossini absurdly contends that his promise to pay the $6500 he owed to Stein "and a lot more" constituted a "counter-offer" to Stein's demand for payment of $6500. Not surprisingly, he has identified no case supporting the proposition that an offer to pay more than the full amount owed reflected an attempt to compromise a disputed claim. The scheme charged here was not to defraud victims and then try to settle with them for less than the amount stolen; rather, it was a shell game characterized by fraudulent promises by Rossini to pay back the funds he stole from his victims.

The government also contends that evidence of Rossini's debts that preexisted the charged scheme to defraud are not barred by Rule 408 because the evidence as to those debts was not offered to prove the validity of the prior debts but rather to provide the necessary context to understand the charged transactions. The defendant objects to that argument on the ground that the government didn't offer it at trial and that in any event those debts were part of the scheme the government alleged. Since there is no evidence that Rossini disputed any debt that was addressed at trial, however, it is not necessary to resolve this argument.

Finally, the government argues that even if none of Stein's statements were introduced, the jury would have convicted Rossini because "[t]he core of the evidence establishing defendant's guilt was on paper and on video." Resp. At 12. A defendant is entitled to a new trial only "if there is a reasonable possibility that the evidence had a prejudicial effect upon the jury's verdict." *United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996). The Court agrees with the government that any reasonable jury would have convicted Rossini even in the absence of the statements Rossini asserts should have been excluded under Rule 408. The Braunshtein check (Count One) was drawn on the same non-existent Go Bank account as was one of the checks Rossini deposited into Stein's bank account and was signed by Rossini. Further**,** Rossini is on video depositing two other fraudulent checks into Stein's account as well, one of which was a check on a closed account of Richard Kruse which Rossini stole; we know this because he had access to Kruse's checkbooks and stole a check from a second Kruse account that he cashed at a currency exchange for $1800. Rossini was the common denominator in each of the charged bank fraud transactions and no reasonable jury could have concluded that he was not responsible for the fraudulent and stolen checks used to carry out the scheme described in the indictment.

Enter: June 8, 2024

John J. Tharp, Jr.
United States District Judge